UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CREAZIONI ARTISTICHE MUSICALI, S.r.l.,

                    Plaintiff,

  -v-

CARLIN AMERICA, INC., *et al.*,

                    Defendants.

No. 14-cv-9270 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, District Judge:

      Defendants Carlin America, Inc. and Edward B. Marks Music Company bring this motion for attorney's fees in connection with a copyright-infringement action that the Court dismissed on December 30, 2016. (Doc. No. 63.) For the reasons stated below, the Court denies the motion.

## I. BACKGROUND

      In 1966, Italian composer Piero Umiliani entered into a written agreement (the "1966 Agreement") with Plaintiff Creazioni Artistiche Musicali, S.r.l. to compose and record music for an Italian film produced that same year.[1] (Doc. No. 3 ("FAC") ¶¶ 1, 14; *see also* Doc. No. 14-1.) In the 1966 Agreement, Umiliani transferred "[a]ll rights to use the music that [he] composed, from the time of its creation . . . to [Plaintiff] for the entire world with the right to transfer it in whole or in part to third parties, so long as [Umiliani's] rights are not prejudiced or limited." (Doc. No. 14-1 ¶ 2.) The 1966 Agreement also gave Plaintiff the right to make adaptations to Umiliani's

---

[1] The Court assumes the parties' familiarity with the facts and procedural history of this case, which are set forth more fully in the Court's December 30, 2016 Order. The Court has also considered Plaintiff's First Amended Complaint, the parties' agreed-upon translation of the 1966 Agreement, Defendants' memorandum of law in support of their motion for attorney's fees, Plaintiff's opposition, Defendant's reply, and the declarations and exhibits attached thereto. (Doc. Nos. 3, 14-1, 65, 66, 69, 70, 71, 73, 74.)

music and "to distribute and reproduce the music in any form and using any method." (*Id.* ¶¶ 2, 5.) Pursuant to this contract, Umiliani composed two "substantially similar" songs for the film – one instrumental and one with vocals – which were contemporaneously registered with the Italian music-rights society SIAE. (FAC ¶¶ 2, 14–16, 27–31.) Two years later, in June 1968, Umiliani composed the song known as *Mah Na Mah Na*, which rose to broad fame through its use in the Muppets television shows and movies. (*Id.* ¶¶ 37, 45.) Plaintiffs allege that *Mah Na Mah Na* is "identical, virtually note-for-note," to the songs Umiliani composed under the 1966 Agreement. (*Id.* ¶ 40.)

Plaintiff brought suit on November 21, 2014, alleging that Defendants' publication and distribution of the allegedly derivative song *Mah Na Mah Na* infringed on Plaintiff's copyright. (Doc. No. 2.) On December 30, 2016, the Court, relying on Italian law, determined that Plaintiff did not possess exclusive rights to the Umiliani music and thus lacked standing to sue under the Copyright Act. Accordingly, the Court granted Defendants' motion to dismiss the complaint in its entirety. *See Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, No. 14-cv-9270 (RJS), 2016 WL 7507757 (S.D.N.Y. Dec. 30, 2016). On February 6, 2017, Defendants made this motion for attorney's fees under the Copyright Act (Doc. No. 63), which was fully briefed on March 13, 2017 (Doc. No. 69, 73). On July 27, 2017, Defendants submitted a supplementary letter, including a report and recommendation recently decided by Magistrate Judge Francis awarding attorney's fees under the Copyright Act. (Doc. No. 75.) Plaintiff submitted a reply to this letter on August 1, 2017. (Doc. No. 76.)

## II. LEGAL STANDARD

The Copyright Act authorizes a district court "in its discretion [to] allow the recovery of full costs" and to "award a reasonable attorney's fee to the prevailing party as part of the costs."

2

17 U.S.C. § 505. Recognizing that the statute "clearly connotes discretion," the Supreme Court has directed district courts to engage in a case-by-case analysis to determine whether fees should be awarded. *Fogerty v. Fantasy Inc.*, 510 U.S. 517, 533 (1994). The touchstone in deciding whether to award fees under § 505 is whether doing so would further the purpose of the Copyright Act, which is to "enrich[] the general public through access to creative works." *Fogerty*, 510 U.S. at 527. The Copyright Act "achieves that end by striking a balance between two subsidiary aims: encouraging and rewarding authors' creations while also enabling others to build on that work." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016).

In order to assist courts in viewing "all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals," *id.* at 1989, the Supreme Court has articulated "several nonexclusive factors to guide courts' discretion," *Fogerty*, 510 U.S. at 534 n.19. These factors include: "(1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 264 (2d Cir. 2015) (quoting *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010)). To best promote the Copyright Act's goals when considering a fee application, district courts should place substantial, but not controlling, weight on the third factor – the objective reasonableness of the losing party's litigation position. *Kirtsaeng*, 136 S. Ct. at 1988.

### III. DISCUSSION

Considering the *Fogerty* factors, the litigation as a whole, and the purposes of the Copyright Act, the Court has little difficulty concluding that Defendants' request for fees must be denied. Because of the substantial weight accorded to the third factor, the Court begins its analysis

3

with the objective reasonableness of Plaintiff's litigation position and then proceeds with the remaining *Fogerty* factors.

## A. Objective Unreasonableness

Defendants argue that Plaintiff's claim was objectively unreasonable in multiple respects, including Plaintiff's interpretation of the 1966 Agreement, its argument that United States law should apply, and its claims concerning the proper interpretation of Italian law. The Court disagrees.

"'Objective unreasonableness' is generally used to describe claims that have no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001); *see also Porto v. Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009) ("A copyright infringement claim is objectively unreasonable when the claim is clearly without merit or otherwise patently devoid of legal or factual basis."). That a court ultimately disagreed with a plaintiff's position in the underlying litigation is not enough: "the question 'is not whether there was a sufficient basis for judgment in favor of defendants, but whether the factual and legal support for plaintiff's position was so lacking as to render its claim . . . objectively unreasonable.'" *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, No. 96-cv-4126 (RWS), 2004 WL 728878, at *3 (S.D.N.Y. Apr. 6, 2004) (alteration in original) (quoting *Procter & Gamble Co. v. Colgate-Palmolive Co.*, No. 96-cv-9123 (RPP), 1999 WL 504909, at *2 (S.D.N.Y. July 15, 1999); *see also Pearson Educ., Inc. v. Liu*, No. 08-cv-6152 (KBF), 2013 WL 6916883, at *3 (S.D.N.Y. Dec. 27, 2103) ("Indeed, while defendant is correct that plaintiffs' position was ultimately untenable, it is not the case that it was objectively unreasonable from the outset.").

Here, Plaintiff's decision to bring suit under the 1966 Agreement was not objectively unreasonable. In the contract, Umiliani transferred to Plaintiff both (1) "[a]ll rights to use the

music . . . from the time of its creation . . . for the entire world" and (2) the power to transfer and otherwise utilize those rights. (Doc. No. 14-1 ¶ 2.) On its face, this language suggests a broad transfer of rights to Plaintiff. It does not, in itself, clearly indicate that Plaintiff lacked standing to sue, and the Court's determination of the meaning of this language and the scope of the transfer required extensive research and findings under Italian law. *See Creazioni*, 2016 WL 7507757, at *5–7. The Court likewise rejects Defendants' argument that Plaintiff's claim rested on an objectively unreasonable application of contract-interpretation principles. (Doc. No. 73 at 2–4.) The scope of Plaintiff's rights under the contract was not obvious on its face and demanded, at a minimum, a determination of (1) which country's law would apply and (2) the contours of that country's relevant legal principles.

Similarly, Plaintiff's argument that United States, and not Italian, law should apply was not objectively devoid of a legal or factual basis. In fact, it was not initially apparent to the parties or the Court that a choice of law analysis would even be required. (*See* Doc. No. 16 at 6:25–7:6.) Furthermore, even after it became clear that a choice of law analysis would be necessary, the proper standard to apply to a conflict of laws over an assignment of copyright was an open question that the Second Circuit had previously declined to address. *See Itar-Tass Russian News Agency v. Russian Kurier*, 153 F.3d 82, 91 n.11 (2d Cir. 1998). While the Court determined that the "most significant relationship" test was appropriate – which tilted toward the application of Italian law – it was by no means objectively unreasonable for Plaintiff to argue that the Court should apply the Second Circuit's copyright-infringement choice of law standard of *lex loci delicti*, which would have resulted in the application of United States law. *See Creazioni*, 2016 WL 7507757, at *3. Plaintiff also pointed to the Second Circuit case of *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679 (2d Cir. 1993), in which the court applied United States law to a copyright dispute

despite the relevance of a series of Brazilian contracts. While the Court distinguished *Corcovado* in the motion to dismiss opinion, *see Creazioni*, 2016 WL 7507757, at *4, the existence of a Second Circuit case applying United States law to a copyright dispute dependent upon foreign contracts lent support to Plaintiff's position. Put simply, "it can hardly be said that the law in this field was well settled when this litigation began," and, as a result, the Court cannot conclude that Plaintiff's position in this regard was objectively unreasonable. *See Effie Film, LLC v. Pomerance*, No. 11-cv-7087 (JPO), 2013 WL 1759560, at *3 (S.D.N.Y. Apr. 24, 2013).

In addition, Plaintiff's position concerning the substance of Italian law was not objectively unreasonable. Plaintiff advanced an argument that Italian law favored its claim, supported by the declarations and testimony of two experts. (Doc. Nos. 41, 42, Minute Entries for July 12, 2016 and September 12, 2016.) While the Court ultimately determined that it would not rely on one of Plaintiff's experts and disagreed with the other expert's characterization of Italian law, the Court finds that Plaintiff's arguments were made in good faith and were not "clearly without merit." *Porto*, 659 F. Supp. 2d at 617.

Finally, while the Court concluded – in the alternative – that Plaintiff's interpretation of the 1966 Agreement was unjustified even under United States law, *see Creazioni*, 2016 WL 7507757, at *9 n.6, that position was likewise not objectively unreasonable. As Defendants conceded, United States law is somewhat more favorable for the Plaintiff than Italian law. (Doc. No. 16 at 7:25–8:2). Consequently, Plaintiff's arguments were not made in bad faith or completely devoid of merit.

In sum, the Court finds that Plaintiff's positions on the interpretation of the contract, the choice of law issue, United States law, and Italian law were not objectively unreasonable.[2]

B. Frivolousness

A complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). This factor clearly overlaps significantly with the consideration of objective unreasonableness, although the Second Circuit has indicated that the two factors are "not necessarily coextensive." *Gordon v. McGinley*, No. 11-cv-1001 (RJS), 2013 WL 1455122, at *2 n.3 (S.D.N.Y. Mar. 28, 2013) (citing *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001)). Nonetheless, the parties here have not separately briefed the frivolousness prong, and, regardless of the exact boundaries of these two factors, the Court has little trouble concluding, for the reasons discussed, that Plaintiff's claim was not frivolous. *See John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08-cv-7834 (DLC), 2016 WL 7392210, at *2 (S.D.N.Y. Dec. 21, 2016) ("For the same reason that [the plaintiff's] litigating position was objectively reasonable, it was not frivolous.").

C. Motivation

Turning to Plaintiff's motivation in bringing suit, the Court finds that Plaintiff's lawsuit was not driven by an improper motive that would justify an award of attorney's fees. "[A] party is improperly motivated where it asserts claims 'not because of [their] inherent merit,' but rather

---

[2] Defendants have submitted for the Court's consideration Magistrate Judge Francis's recent report and recommendation in *TCA Television Corp. v. McCollum*, which awards attorney's fees upon finding that the losing party's litigation position was objectively unreasonable. (Doc. No. 75; *see also* Doc. No. 124, *TCA Television Corp. v. McCollum*, 15-cv-4325 (GBD) (JCF) (S.D.N.Y. June 5, 2017). In *TCA*, the Second Circuit had previously held that the plaintiffs lacked standing because the work in question had entered the public domain. *See TCA Television Corp. v. McCollum*, 839 F.3d 168, 187 (2d Cir. 2016). The Court is not persuaded that the *TCA* report and recommendation bears on the determination of the fees motion here at all. First, *TCA* involved a Second Circuit ruling that the losing party's position was meritless; there has been no such appellate ruling here. And, second, *TCA* involved readily distinguishable contractual language and did not involve any choice of law or foreign law issues. Accordingly, there is little in common between *TCA* and the present case other than the fact that both claims failed because the plaintiffs lacked standing to pursue them.

7

because the party seeks to 'knowingly gamble[] on an unreasonable legal theory in order to achieve a secondary gain – in this case, the leveraging of a settlement." *Agence Fr. Presse v. Morel*, No. 10-cv-2730 (AJN), 2015 WL 13021413, at *5 (S.D.N.Y. Mar. 23, 2015) (alterations in original) (quoting *Torah Soft Ltd. v. Drosnin*, No. 00-cv-5650 (JCF), 2001 WL 1506013, at *5 (S.D.N.Y. Nov. 27, 2001).

Here, the Court finds no evidence to support Defendants' contention that Plaintiff is a copyright troll. In common parlance, copyright trolls are "more focused on the business of litigation than on selling a product or service or licensing their [copyrights] to third parties to sell a product or service." *Malibu Media LLC v. Doe*, No. 15-cv-4369 (AKH), 2015 WL 4092417, at *2 (S.D.N.Y. July 6, 2015) (quoting Matthew Sag, *Copyright Trolling, An Empirical Study*, 100 Iowa L. Rev. 1105, 1008 (2015)). A copyright troll "plays a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim." *Id.* As the declaration of Plaintiff's President, Filippo Sugar, makes clear, Plaintiff is not only a long-running music publisher – known for owning the soundtracks of classic Italian films such as *La Dolce Vita* and *8½* – but is also not litigious, having never before filed a lawsuit in a United States court. (*See* Doc. No. 71.) Defendants' argument in their reply that Plaintiff is in fact a copyright troll because (1) it made an overture for a pre-filing resolution of the dispute and (2) its parent company, Gruppo Sugar, filed one copyright claim in this district that resulted in a settlement is hardly compelling. Put simply, Defendants have not demonstrated the factual indicia associated with trolling – for

example, broad litigiousness, a pattern of unreasonable legal positions, and the regular extraction of settlements.[3]

Furthermore, the Court disagrees with Defendants' contention that Plaintiff acted in bad faith by "allowing Umiliani's music to rot and then seeking to profit from the work done by [Defendants]." (Doc. No. 64 at 7–8.) As was obvious from the very first conference in this matter, Plaintiff filed suit in late 2014 in part because the Supreme Court had only recently abolished the equitable defense of laches in copyright infringement actions. (*See* Doc. No. 16 at 6:2–19; *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1973 (2014).) Before *Petrella*, any suit by Plaintiff would almost certainly have failed on laches grounds, which helps explain why Plaintiff filed this lawsuit when it did.

D. Compensation and Deterrence

The final *Fogerty* factor – relating to the need to compensate defendants and to deter opportunistic plaintiffs – likewise does not support an award of fees. This factor is meant to ensure that defendants are encouraged to protect their legitimate rights and bad-faith plaintiffs are discouraged from bringing frivolous and unreasonable claims. *See Fogerty*, 510 U.S. at 529. But as already noted, Plaintiff's conduct in this litigation was not objectively unreasonable, frivolous, or driven by an improper motive, and thus does not warrant the deterrent effect of fees. In addition, the rationale for compensating Defendants is diminished in this case, which was resolved on a motion to dismiss and was thus less costly than it would have been had the litigation proceeded through full discovery, a motion for summary judgment, or trial. The fact that Defendants are large music publishing companies, presumably possessing the resources and incentives to litigate

---

[3] The Court *agrees* with Defendants that Plaintiff's inclusion of Italian-language court cases without English-language translations was curious and poorly considered. However, the Court does not believe that this inexplicable failure, standing alone, warrants a finding of bad faith or of a frivolous or objectively unreasonable litigation position.

such claims, also weighs against the imposition of attorney's fees in this case. *Cf. Agence Fr. Presse*, 2015 WL 13021413, at \*6 (concluding that compensation was necessary where the victorious party was an individual and "faced the greater challenge in sustaining prolonged litigation").[4]

\* \* \*

Having considered the various *Fogerty* factors, the Court also concludes that an award of fees in this case would not advance the purposes of the Copyright Act. Specifically, the granting of fees here would not reward the author for his works or meaningfully enable others to build on creative works. *See Kirtsaeng*, 136 S. Ct. at 1986. Nor would an award of fees to Defendants further the Copyright Act's fundamental goal of "enriching the general public through access to creative works." *Fogerty*, 510 U.S. at 527. To the contrary, this case involves a work that the public has enjoyed for decades, and the controversy, from its inception, focused primarily on determining which corporation would draw royalties from the use of *Mah Na Mah Na*. The Court's decision that those proceeds should remain with Defendants neither hinders nor advances the Copyright Act's goals. Accordingly, with regard to this case, the Act's aims do not support an abandonment of the general American rule that litigants are responsible for their own fees.

IV. CONCLUSION

For the reasons set forth above, the Court concludes that an award of costs and fees to Defendants would be inappropriate. In this case, Plaintiff brought a claim of copyright

---

[4] The Court further concludes, for the same reasons set forth above, that a fee award pursuant to the Court's inherent power would be inappropriate, since such awards require a far higher showing of misbehavior than the relatively permissive Copyright Act standard. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 50 (1991) (holding a court has the inherent power to award "attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'" (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975))). Accordingly, because Defendants fail to satisfy the Copyright Act standard they also fail to satisfy the standard under the Court's inherent power.

infringement that failed, but it was nevertheless not objectively unreasonable, frivolous, or made in bad faith. Rather, it was simply unsuccessful.

Accordingly, Defendants' motion is DENIED. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 63.

SO ORDERED.

Dated:     August 4, 2017
                New York, New York

                                                RICHARD J. SULLIVAN
                                                UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/4/17